AO 106 (Rev. 06/09) Application for a Search Warrant



# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) |

Case No.

**'17 MJ 3239**

One Apple I-phone, Model #A1784

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, which is incorporated by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 and 963 | Importation of controlled substances and conspiracy to do the same |

The application is based on these facts:
See Attached Affidavit in Support of Search Warrant, which is incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Valentin Obregon, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/7/17

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | Case Number: **'17 MJ3239** |
| | ) | |
| (1)   Sony Xperia Cellphone | ) | **AFFIDAVIT OF SPECIAL** |
| | ) | **AGENT VALENTIN** |
| | ) | **OBREGON IN SUPPORT OF** |
| (2)   Apple I-phone | ) | **A SEARCH WARRANT** |
| Model# A1784 | ) | |
| | ) | |
| | ) | |

## AFFIDAVIT

I, Valentin Obregon, a Special Agent with the Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1.    I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the Department of Homeland Security, Homeland Security Investigations agents for the following target property:  two cellular telephones seized from Salvador CASTILLO-Sotelo on July 21, 2017.  The cellular telephones are: one Sony Xperia , herein referred to as ("Target Telephone #1"), and one Apple I-phone, Model # A1784, herein referred to as ("Target Telephone #2").

//

2.     Target Telephones #1 and #2 were seized from CASTILLO on July 21, 2017, at the time of his arrest.  It is believed that Target Telephone #1 and #2 were used by CASTILLO to communicate with co-conspirators during a drug smuggling event on July 21, 2017.  CASTILLO has been charged with Importation of 1323.8 kilograms of marijuana in the Southern District of California, 17MJ2491/17CR2354.  Probable cause exists to believe that Target Telephone #1 or #2 contains evidence relating to violations of Title 21, United States Code Sections 952, 960, and 963.  The specified telephones are currently in the possession of the Department of Homeland Security, Homeland Security Investigations (HSI), Deputy Special Agent in Charge (DSAC) San Diego, 2297 Niels Bohr Court, Suite 110, San Diego, CA 92154 (Evidence Vault).  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

3.     Based upon my training, experience and all the facts and opinions set forth in this Affidavit, I believe the following items will be found in the cellular telephone to be searched:

a.     Telephone numbers or identities assigned to the device, including usernames and passwords and electronic mail addresses;

b.     Call history information, including Internet Protocol addresses accessed by the device or accessing the device;

c.     Stored photographs, videos and text messages;

d.     Stored electronic mail, including attachments, and voice messages and other recordings;

e.     Web-browsing history and any stored web pages;

f.     Stored documents and other files;

g.     Stored geo-location information; and,

1          h.    Data stored in any application.

2    These items may be or lead to: (1) evidence of the existence of drug trafficking in

3    violation of Title 21, United States Code Sections 952, 960, and 963.

4                  **EXPERIENCE AND TRAINING**

5        4.    I am a Homeland Security Investigations (HSI) Special Agent (SA)

6    assigned to a Contraband Smuggling Investigations Group in San Diego, California.

7    I have over five years of combined experience as a SA and as a Task Force Officer

8    with US Customs and Border Protection.   I am a graduate of the Criminal

9    Investigator Training Program and the Immigration and Customs Enforcement

10   Special Agent Training program at the Federal Law Enforcement Training Center in

11   Glynco, GA. I also graduated from the University of Illinois at Chicago with a

12   Bachelor's of Liberal Arts and Sciences degree in Criminal Justice Administration. I

13   have received basic training in conducting narcotics smuggling investigations and

14   the enforcement of numerous Immigration and Customs laws within the United

15   States.  My training has also included the use of cellular and digital telephones and

16   other electronic devices used by narcotics smugglers in the normal course of their

17   illicit activities.

18       5.    Since becoming an HSI SA, I have been involved in numerous

19   narcotics trafficking investigations involving the importation, distribution, and sale

20   of large quantities of controlled substances.  In the course of my duties, I have

21   worked as the case agent directing specific drug-related investigations; I have

22   worked as a surveillance agent and observed and recorded movements of individuals

23   trafficking in drugs and of those suspected of trafficking in drugs;  I have initiated

24   and executed numerous arrests for drug-related offenses, including possession with

25   the intent to distribute and the importation of controlled substances; and, I have

26   interviewed defendants, witnesses, and informants relative to the illegal trafficking

27   of controlled substances.  Through my observations and these interviews, I have

1  gained a working knowledge and insight into the normal operational habits of
2  narcotics smugglers, with particular emphasis on those who attempt to import
3  narcotics into the United States from Mexico at the San Diego international ports of
4  entry.

5      6.    By virtue of my employment as a Special Agent with HSI, I have
6  performed various tasks, which include, but are not limited to:

7          a.    Functioning as a surveillance agent and thereby observing and
8                recording movements of persons trafficking in controlled substances
9                and those suspected of trafficking in controlled substances;

10         b.    Participating in the tracing of monies and assets gained by
11                controlled substance traffickers from the illegal sale of controlled
12                substances and/or the laundering of monetary instruments;

13         c.    Interviewing witnesses, cooperating individuals, and informants
14                involved in or with knowledge of  the illegal trafficking of controlled
15                substances and the distribution of monies and assets derived from the
16                illegal trafficking of controlled substances (laundering of monetary
17                instruments); and

18         d.    Functioning as a case agent, which entails the supervision of
19                specific investigations involving the trafficking of narcotics and the
20                laundering of monetary instruments.

21     7.    Through the course of my training, investigations, and conversations
22  with other law enforcement personnel, I am aware that it is a common practice for
23  narcotics smugglers to work in concert with other individuals and to do so by
24  utilizing cellular telephones, pagers and portable radios to maintain communications
25  with co-conspirators in order to further their criminal activities.  This is particularly
26  true in cases involving distributional quantities of narcotics.  Typically, load drivers
27  smuggling controlled substances across the border are in telephonic contact with

1   co-conspirators immediately prior to and following the crossing of the load vehicle,

2   at which time they receive instructions on how to cross and where and when to

3   deliver the controlled substance. Narcotics smugglers and their organizations use

4   cellular and digital telephones, in part, because these individuals believe law

5   enforcement is unable to track the originating and destination phone numbers of

6   calls placed to and from cellular and digital telephones.

7       8.      In preparing this affidavit, I have conferred with other agents and law

8   enforcement personnel who are experienced in the area of narcotics investigations,

9   and the opinions stated below are shared by them. Further, I have personal

10  knowledge of the following facts, or have had them related to me by persons

11  mentioned in this affidavit.

12      9.      Based upon my training and experience as a Special Agent, and

13  consultations with law enforcement officers experienced in narcotics smuggling

14  investigations, and all the facts and opinions set forth in this affidavit, I submit the

15  following:

16          a.      Drug smugglers will use cellular/mobile telephones because they

17                  are mobile and they have instant access to telephone calls, text, web,

18                  and voice messages.

19          b.      Drug smugglers will use cellular/mobile telephones because they

20                  are able to actively monitor the progress of their illegal cargo while the

21                  conveyance is in transit.

22          c.      Drug smugglers and their accomplices will use cellular/mobile

23                  telephones because they can easily arrange and/or determine what time

24                  their illegal cargo will arrive at predetermined locations.

25          d.      Drug smugglers will use cellular/mobile telephones to direct

26                  drivers to synchronize an exact drop off and/or pick up time of their

27                  illegal cargo.

e.      Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f.      Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

10.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.      tending to indicate efforts to import marijuana, or some other controlled substances from Mexico into the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of marijuana, or some other controlled substances from Mexico into the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in importation of marijuana, or some other controlled substances from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of marijuana, or some other controlled substances from Mexico into the United States;

e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

g.    Finally, drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement.    In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo.  Based on my training and experience, individuals such as CASTILLO will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved.  Given those facts, I respectfully request permission to search Target Telephones for data beginning on June 21, 2017, up to and including July 21, 2017.

### FACTS SUPPORTING PROBABLE CAUSE

11.    On July 21, 2017, at approximately 11:15 AM, Salvador CASTILLO-Sotelo was sitting in his vehicle in the pre-primary area at the Otay Mesa Cargo Port of Entry (POE).  CASTILLO was attempting to enter the United States in a 2008 Freightliner tractor (CA 9E37328), as the driver and only occupant.

//

12.     Customs and Border Protection Officer (CBPO) Horn was working primary inspection in Lane 1, when the vehicle driven by CASTILLO approached. Officer Horn spoke with the driver and obtained two negative Customs declarations from CASTILLO.    Officer Horn, being unfamiliar with the commodity being imported, directed the vehicle to secondary for further inspection.

13.     In secondary, the vehicle was screened by the VACIS X-ray machine, where Officer Rivera noticed anomalies in the trailer area.    The product was not consistent with what was manifested.    The image revealed different, loose packaging mixed in the palletized merchandise. Officer Rivera directed the vehicle to a loading dock for a further, more detailed inspection.

14.    Officer Rivera then inspected the packages that he saw on the X-ray image and discovered what appeared to be narcotics inside the boxes.    Officer Rivera notified the CARIT office of the findings, who then processed the narcotics. The packages contained a green leafy substance that field tested positive for marijuana. The total weight of the packages was 1323.8 kilograms.

15.     HSI Special Agent Adam Beckhelm responded to the Port of Entry and verified the packages, compartment and vehicle.    CASTILLO was read his rights, per Miranda in the Spanish language, witnessed by CBPOAnguiano.    CASTILLO stated he understood his rights, however, he invoked his rights and chose not to speak.

16.     CASTILLO was arrested for violation of Title 21 USC 952/960, Importation and Transportation of a Controlled Substance. CASTILLO was booked into the Metropolitan Correctional Center in San Diego, CA.

17.     Based upon my experience and investigation in this case, I believe that CASTILLO, as well as other persons as yet unknown, were involved in an on-going conspiracy to import 1323.8 kilograms of marijuana.    Based on my experience investigating narcotics smugglers, I believe that CASTILLO may have used Target

1  Telephone #1and #2 to coordinate with co-conspirators regarding the importation
2  and delivery of marijuana, and to otherwise further this conspiracy both inside and
3  outside of the United States.  I also know that recent calls made and received,
4  telephone numbers, contact names, electronic mail (email) addresses, appointment
5  dates, text messages, pictures and other digital information are stored in the memory
6  of cellular telephones which may identify other persons involved in narcotics
7  trafficking activities.

8      18.    Based upon my experience and training, consultation with other law
9  enforcement officers experienced in narcotics trafficking investigations, and all the
10  facts and opinions set forth in this affidavit, I believe that information relevant to the
11  narcotics smuggling activities of CASTILLO and his co-conspirators, such as
12  telephone numbers, made and received calls, contact names, electronic mail (email)
13  addresses, appointment dates, messages, pictures and other digital information are
14  stored in the memory of the cellular telephones described herein.

15                              **METHODOLOGY**

16      19.    It is not possible to determine, merely by knowing the cellular
17  telephone's make, model and serial number, the nature and types of services to
18  which the device is subscribed and the nature of the data stored on the device.
19  Cellular devices today can be simple cellular telephones and text message devices,
20  can include cameras, can serve as personal digital assistants and have functions such
21  as calendars and full address books and can be mini-computers allowing for
22  electronic mail services, web services and rudimentary word processing.   An
23  increasing number of cellular service providers now allow for their subscribers to
24  access their device over the internet and remotely destroy all of the data contained
25  on the device.  For that reason, the device may only be powered in a secure
26  environment or, if possible, started in "flight mode" which disables access to the
27  network.  Unlike typical computers, many cellular telephones do not have hard

1   drives or hard drive equivalents and store information in volatile memory within the

2   device or in memory cards inserted into the device.   Current technology provides

3   some solutions for acquiring some of the data stored in some cellular telephone

4   models using forensic hardware and software.   Even if some of the stored

5   information on the device may be acquired forensically, not all of the data subject to

6   seizure may be so acquired.   For devices that are not subject to forensic data

7   acquisition or that have potentially relevant data stored that is not subject to such

8   acquisition, the examiner must inspect the device manually and record the process

9   and the results using digital photography.   This process is time and labor intensive

10   and may take weeks or longer.

11          20.    Following the issuance of this warrant, I will collect the subject cellular

12   telephone and subject it to analysis.   All forensic analysis of the data contained

13   within the telephone and its memory cards will employ search protocols directed

14   exclusively to the identification and extraction of data within the scope of this

15   warrant.

16          21.    Based on the foregoing, identifying and extracting data subject to

17   seizure pursuant to this warrant may require a range of data analysis techniques,

18   including manual review, and, consequently, may take weeks or months. The

19   personnel conducting the identification and extraction of data will complete the

20   analysis within ninety (90) days, absent further application to this court.

21                          **PRIOR ATTEMPTS TO OBTAIN DATA**

22          23.    The United States attempted to download Target Telephones #1and #2

23   on the date of CASTILLO's arrest, however, the Cellbrite machine used for that was

24   unable to download the phone at the time. CASTILLO did not give agents written

25   consent to search his telephones.

26   //

27   //

# CONCLUSION

24.   Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that defendant CASTILLO used Target Telephone #1 and #2 to facilitate the offense of importing marijuana.

These telephones were likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960, and 963.

25.   I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by CASTILLO continues to exist on Target Telephones #1 and #2.

26.   Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth supra are likely to be found in the property to be searched described in Attachments B-1 and B-2 (incorporated herein).   Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachments B-1 and B-2.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Valentin Obregon
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 7 day of September, 2017.

Honorable Barbara L. Major
United States Magistrate Judge

11

ATTACHMENT A-2

PROPERTY TO BE SEARCHED

One Apple I-phone cellphone
Model # A1784
Evidence Bag# A1800050
Seizure # 2017250600093501
HSI Case # SY13WE17Sy0168
Description: Light Grey/Silver Apple Iphone, with a white face.  There are
no markings on the front, other than the camera hole and home button.  The
back of the phone contains the Apple logo in the middle, the word I-phone in
the bottom middle and the Model # of A1784 and FCC ID# of BCG-
E3092A.  It is approximately 16 cm in length and 7.5 cm in width.



This phone is currently in the possession of the Department of Homeland Security,
Homeland Security Investigations, Deputy Special Agent in Charge (DSAC) San
Diego, 2297 Niels Bohr Court, Suite 110, San Diego, CA 92154 (Evidence Vault).

**ATTACHMENT B-2**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from June 21, 2017 up to and including July 21, 2017:

a.  tending to identify attempts to marijuana or some other controlled substance from the United States to Mexico;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of marijuana or some other controlled substance from the United States to Mexico;

c.  tending to identify co-conspirators, criminal associates, or others involved in smuggling marijuana or some other controlled substance from the United States to Mexico;

d.  tending to identify travel to or presence at locations involved in the smuggling of marijuana or some other controlled substance from the United States to Mexico, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963**.

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.